UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BRETT W. LUTZ,

                                Plaintiff,

                                                          9:20-CV-240
         v.                                               (GTS/DJS)

M. FRANCISCO, *Corrections Officer*, and
M. COONEY, *Corrections Officer*,

                                Defendants.

**APPEARANCES:**                                **OF COUNSEL:**

BRETT W. LUTZ
Plaintiff, *Pro Se*
17-B-0042
Franklin Correctional Facility
P.O. Box 10
Malone, NY 12953

HON. LETITIA JAMES                   LAUREN R. EVERSLEY,
Attorney General of the State of New York   ESQ.
Attorney for Defendants                 Assistant Attorney General
The Capitol
Albany, NY 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

### I. INTRODUCTION

    *Pro se* Plaintiff Brett Lutz brought this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was in the custody of the Department of Corrections and Community Supervision ("DOCCS") at Mid-State

Correctional Facility. Dkt. No. 14, Am. Compl. Following initial review of his Amended Complaint, the Court allowed the following claims to proceed: (1) Eighth Amendment excessive force and New York State law assault claims against Defendant Francisco; (2) a First Amendment retaliation claim against Francisco arising out of allegations that he issued a false misbehavior report and assaulted Plaintiff on November 24, 2017, in retaliation for Plaintiff filing a grievance against him one day earlier; and (3) Eighth Amendment conditions of confinement claims against Defendants Francisco and Cooney arising out of allegations that they searched Plaintiff's cell and conducted random pat-frisks on him that were unrelated to any penological interest. Dkt. No. 17.

Specific to those claims, Plaintiff alleges that on November 23, 2017, he was delivering a newspaper to another inmate, and Defendant Francisco raced down the hall toward Plaintiff, asked Plaintiff where his bunk was, grabbed Plaintiff's throat, and pushed him approximately ten feet pinning him against the wall, causing Plaintiff to be unable to breathe for eight to ten seconds. Am. Compl. at ¶¶ 17-22. He then made derogatory comments to Plaintiff regarding his sexuality. *Id.* at ¶ 23. Plaintiff alleges he filed a grievance against Defendant Francisco on November 23, 2017 regarding the assault and the disparaging remarks. *Id.* at ¶ 24. He alleges that the grievance was forwarded directly to the Superintendent for review, who failed to render a determination within 25 days, taking 46 days. *Id.* at ¶¶ 26-27. He alleges that on November 24, 2017, Defendant Francisco "screamed at him, asking if plaintiff was trying to get him 'locked-out,' and if plaintiff wanted 'to get [himself] killed,' referring to the grievance plaintiff had filed." *Id.* at ¶ 31. Defendant Francisco then issued Plaintiff a misbehavior report

for being on the porch for a smoke break, even though Plaintiff had requested and received permission to do so. *Id.* at ¶ 32. Plaintiff alleges that on the same day, Defendant Francisco ordered Plaintiff to wait in a hallway, to assume the frisk position, then performed a full body frisk, removing all items from the pockets of the clothes Plaintiff was wearing, and said that if Plaintiff did not want to listen to him, then this would continue to happen. *Id.* at ¶¶ 33-37. Defendant Francisco then punched Plaintiff in his head and back, and kneed him in the kidney area, causing extreme pain, and continued to strike Plaintiff multiple times. *Id.* at ¶¶ 38-39. Plaintiff alleges that from the end of November until the middle of December, Defendant Francisco continued to threaten and harass Plaintiff, in part by seizing alleged contraband from his personal locker. *Id.* at ¶¶ 43-44. He alleges that he was moved from his housing unit, and then was harassed by Defendant Cooney, who performed a frisk on Plaintiff's locker and confiscated his property. *Id.* at ¶¶ 47-53. Plaintiff alleges this pattern of cell searches and contraband receipts by Defendants Francisco and Cooney continued through February, for the satisfaction of retaliation with no penological interest, solely to harass and annoy Plaintiff. *Id.* at ¶¶ 54-61.

Defendants have now moved for summary judgment on the basis that Plaintiff failed to exhaust his claims, and have also moved to dismiss Plaintiff's state law assault claims on the basis that they are barred by New York Correction Law § 24, and are untimely. Dkt. No. 21. Plaintiff has submitted an opposition to the Motions, Dkt. No. 25, Pl.'s Opp., as well as supporting documents, Dkt. Nos. 24 & 30, and Defendants have submitted a Reply, Dkt. No. 26. For the following reasons, the Court recommends that

Defendants' Motion for Summary Judgment be granted and, in the alternative, that Defendants' Motion to Dismiss be granted.

## II. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Standard on a Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.

*Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see also Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Exhaustion of Administrative Remedies

#### *1. Exhaustion Procedure*

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §

1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id.* at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that the mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). An inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id.* at § 701.5(b). Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id.* at § 701.5(c). Finally, upon appeal of the superintendent's decision,

the Central Office Review Committee ("CORC") makes the final administrative determination. *Id.* at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

An expedited procedure exists for grievances regarding alleged harassment; this procedure also requires that the grievant receive a response from CORC in order to exhaust. 7 N.Y.C.R.R. § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are given a grievance number and the Superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a bona fide case of harassment. *Id.* at §§ 701.8(b) & (c). If it is determined that the grievance is a bona fide harassment issue, the Superintendent must initiate an investigation or request an investigation be undertaken by the Inspector General's Office or the New York State Police. *Id.* at § 701.8(d). The Superintendent is to render a decision on the grievance within 25 days of receipt, unless an extension is granted. *Id.* at § 701.8(f). If the Superintendent fails to respond within 25 days, the grievant may appeal the grievance to CORC "by filing a notice of decision to appeal ('form #2133') with the inmate grievance clerk." *Id.* at § 701.8(g). The grievant may appeal the Superintendent's response to CORC by filing a notice of decision to appeal within seven days of receipt of the Superintendent's response. *Id.* at §§ 701.8(h). "Unless otherwise stipulated . . . all

procedures, rights, and duties pertaining to the processing of any other grievance as set forth in section 701.5 of this Part shall be followed." *Id.* at § 701.8(i).

## 2. *Whether Plaintiff Failed to Exhaust*

In their Motion, Defendants assert that Plaintiff failed to exhaust his administrative remedies. In particular, Defendants contend that Plaintiff only filed grievances regarding the alleged assault by Defendant Francisco on November 23, 2017 and Defendant Francisco's alleged threats in retaliation for the November 23, 2017 incident. Dkt. No. 21-1, Defs.' Mem of Law at pp. 7-10. They contend that after Plaintiff received a response from the Superintendent, he never appealed the determination to CORC. *Id.*

Defendants submit that Plaintiff filed a grievance on November 24, 2017, which alleged that on November 23, 2017 Defendant Francisco became aggressive with him and grabbed him by the throat and drove him to the back wall while making derogatory statements. Dkt. No. 21-3, Tapia Decl. at ¶ 18, Ex. B. That grievance was consolidated with a second grievance that Plaintiff filed that day, in which he alleged that Defendant Francisco threatened him in retaliation for the November 23, 2017 incident. *Id.* The consolidated grievances were assigned Grievance No. MS-23218-17. *Id.* The Superintendent denied Plaintiff's grievance on January 12, 2018. Tapia Decl. at ¶ 19, Ex. C. Plaintiff never appealed the determination. Dkt. No. 21-5, Seguin Decl. at ¶ 12, Ex. A; Tapia Decl. at ¶ 20. Plaintiff does not contend that he did appeal his grievance to CORC. Rather, he asserts a number of reasons why his failure to fully exhaust should be excused. *See* Am. Compl.; Pl.'s Opp.

The exhaustion requirement is designed to permit prison officials to address inmate concerns before the commencement of litigation. *Jones v. Bock*, 549 U.S. 199, 204 (2007). An inmate must exhaust the entire DOCCS three-step process to exhaust a claim under the PLRA. *Seuffert v. Donovan*, 2016 WL 859815, at *4 (N.D.N.Y. Feb. 5, 2016), *report and recommendation adopted*, 2016 WL 796090 (N.D.N.Y. Feb. 26, 2016). Here, the facts are not disputed that Plaintiff proceeded to this Court before fully exhausting the DOCCS procedures regarding the alleged November 23, 2017 assault and threat of retaliation. He thus failed to fully exhaust these claims. *See Jones v. Ott*, 2020 WL 1976314 (N.D.N.Y. Mar. 27, 2020), *report and recommendation adopted*, 2020 WL 1975063 (N.D.N.Y. Apr. 24, 2020).

In addition, Defendants contend that Plaintiff never filed any grievance regarding any of the claims in his Amended Complaint that are not addressed in the November 24, 2017 grievances. Defs.' Mem. of Law at pp. 11-12. Plaintiff does not dispute this. *See* Pl.'s Opp.; Dkt. No. 25-1 at p. 35 (admitting that Grievance No. MS-23218-17 is the only responsive grievance to Plaintiff's claims in this action). The Court recommentapiads finding that Plaintiff failed to fully exhaust any of the claims in this case.

### *3. Whether Plaintiff's Failure to Exhaust may be Excused*

A prisoner's failure to exhaust administrative remedies may be excused if remedies were unavailable to the inmate. *Ross v. Blake,* 136 S. Ct. at 1858. "An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Supreme Court has provided three potential circumstances in which administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as

a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Plaintiff's main assertion is that his grievance should be deemed exhausted because the Superintendent took longer than the allotted twenty-five days to respond to the grievance. Am. Compl. at ¶ 15; Pl.'s Opp. at ¶ 11; *see* 7 N.Y.C.R.R. § 701.8(f). "[A]t each step of the IGP, a decision must be rendered within a specified time period. Where the IGRC and/or superintendent do not timely respond, an inmate must appeal to the next step, assuming there is a next step in the IGP." *Mayandeunas v. Bigelow*, 2019 WL 5273527, at *5 (N.D.N.Y. May 21, 2019) (internal quotation marks omitted) (citations omitted); *see also Heyliger v. Gebler*, 624 Fed. Appx. 780, 782 (2d Cir. 2015) (summary order) ("Under the regulations in effect in 2005, if at any step of the grievance process, an inmate did not receive a response within the specified timeframe, he was nonetheless permitted to 'appeal[ ] to the next step.' Thus, when Heyliger did not receive a written response from the IGRC, appeal to the superintendent was still an available administrative remedy.") (internal citation omitted).[1]

---

[1] The Second Circuit's recent decision in *Hayes v. Dahlke*, 976 F.3d 259 (2d Cir. 2020) is not to the contrary. There, the Court ruled that the failure of CORC to decide an appeal within the specified thirty day period for doing so rendered an inmate's administrative remedies exhausted. *Id.* at 270-271. In reaching that conclusion the Court noted "there simply were no further steps under the regulations that Hayes could have taken to obtain relief on most of his grievances." *Id.* at 271. Here, however, once the Superintendent failed to timely respond, DOCCS regulations permitted Plaintiff to appeal absent a response, an option he did not avail himself of.

- 10 -

The regulations provide that "[i]f the superintendent fails to respond within the required 25 calendar day time limit the grievant may appeal his/her grievance to CORC. This is done by filing a notice of decision to appeal (form #2133) with the inmate grievance clerk."  7 N.Y.C.R.R. §701.8(g).  Thus, there was a next step that was explicitly provided in the IGP.  As such, there was a clear path set forth in the procedures that Plaintiff could have followed when he did not receive a timely response from the Superintendent, and that delay does not excuse Plaintiff's failure to appeal to CORC.

Plaintiff also alleges that he did not fully exhaust his claims because he feared for his safety.  In this regard, Plaintiff alleges that Defendants Francisco and Cooney acted to intimidate and retaliate against Plaintiff for filing the grievance, and that he "found himself with only two options: continue to p[u]rsue the grievances willfully knowing that it could lead to more harm or to give in to Defendant(s)' requests and threats."  Pl.'s Opp. at ¶¶ 15-16; *see also* Am. Compl. at ¶¶ 16 & 31.  More specifically, Plaintiff alleges in his Amended Complaint that on November 24, Defendant Francisco "accosted plaintiff and again screamed at him, asking if plaintiff was trying to get him 'locked-out,' and if plaintiff wanted 'to get [himself] killed,' referring to the grievance plaintiff had filed."  Am. Compl. at ¶ 31.

"Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable."  *Rodriguez v. Cross*, 2017 WL 2791063, at *8 (N.D.N.Y. May 9, 2017) (citing Ross *v. Blake,* 136 S. Ct. at 1860, n. 3).  Here, Plaintiff asserts that Defendant Francisco threatened him regarding the grievance he had written against him, asking Plaintiff "if he was trying to get him (Defendant) locked out or get

- 11 -

himself (Plaintiff) killed"? Pl.'s Opp. at ¶ 28; Am. Compl. at ¶ 31.  However, Plaintiff's second grievance, which was consolidated with his first, appears to complain of this very incident.  In it, Plaintiff describes that Defendant Francisco approached him and stated "what are you trying to get yourself killed, are you trying to get me locked out of the jail or have charges pressed against me . . . . This is his retaliation for the incident that occur[r]ed on 11/23/17.  I am afraid for my life because this is the second day he has threatened my life."  Dkt. No. 21-3 at p. 11.  As such, Plaintiff actually filed a grievance after the threat was allegedly made to him; the threat did not deter him from availing himself to the grievance process.  This undercuts his contention that administrative remedies were unavailable to him because the threat made him afraid to file grievances.[2]

"Even in the aftermath of *Ross*, [ ] the Second Circuit has concluded that when an inmate files a grievance, notwithstanding the threats of retaliation and intimidation of which that inmate complains, the failure to fully exhaust under the PLRA will not be excused on this ground." *Grant v. Kopp*, 2019 WL 368378, at *6 (N.D.N.Y. Jan. 3, 2019), *report and recommendation adopted*, 2019 WL 367302 (N.D.N.Y. Jan. 30, 2019); *see also McNab v. Doe*, 686 Fed. Appx. 49 (2d Cir. 2017) (summary order) ("Appellant asserted that defendants tried to intimidate him, and intimidation can excuse the failure to exhaust.  However, none of the actions allegedly taken by the defendants actually

---

[2] While the Amended Complaint makes reference to an assault that may have occurred after Plaintiff filed his grievance, Plaintiff does not raise that as a basis for his failure to exhaust in his opposition.  *See* Pl.'s Opp.  As Defendants have demonstrated that Plaintiff failed to exhaust his administrative remedies, the burden is on Plaintiff to establish unavailability, which he fails to do by failing to provide any evidence on this point.  *See Martin v. Wyckoff*, 2018 WL 7356771, at *5 (N.D.N.Y. Oct. 16, 2018), *report and recommendation adopted*, 2019 WL 689081 (N.D.N.Y. Feb. 19, 2019).

- 12 -

prevented Appellant from submitting his complaint letter. . . . Appellant was able to take the first step in the grievance process, and nothing in the record suggests he was intimidated from taking the next step (appealing the rejection of his informal grievance.)"); *Riles v. Buchanan*, 656 Fed. Appx. 577, 581 (2d Cir. 2016) (summary order) ("But because Riles claims that he thereafter submitted his March 23 Level 1 grievance in spite of this alleged threat, it cannot be said that the threat interfered with his exhaustion. He was not deterred from exhausting; he simply did not exhaust in accordance with the procedures."); *Pridgen v. Beatie*, 2018 WL 1402049, at *8 (N.D.N.Y. Jan. 17, 2018), *report and recommendation adopted*, 2018 WL 1394146 (N.D.N.Y. Mar. 19, 2018) ("Specifically, Pridgen testified that Beatie punched him after he asked for a grievance related to the issue involving the dishes. Pridgen also testified that on the way to the SHU, officers told him not to report any of his injuries. However, despite Beatie's behavior and the subsequent warning, once Pridgen arrived in the SHU, he 'received' and completed a 'grievance paper' and gave the grievance to officers"); *Grafton v. Hesse*, 2017 WL 9487092, at *8 (E.D.N.Y. Aug. 25, 2017), *report and recommendation adopted sub nom. Grafton v. Assistant Deputy Undersheriff Hesse*, 2017 WL 4286266 (E.D.N.Y. Sept. 27, 2017), *aff'd sub nom. Grafton v. Hesse*, 783 Fed. Appx. 29 (2d Cir. 2019). As such, Plaintiff's alleged fear of retaliation is insufficient to excuse his failure to exhaust.

Finally, Plaintiff contends that the grievance process was opaque and that he was unaware of certain aspects of the procedure. In particular, he contends that he was unaware of the procedure of appealing if a response is not timely received, and that he needed to grieve each issue that he wanted to pursue. Pl.'s Opp. at ¶¶ 10-13. However,

"[a] plaintiff post-*Ross* must show more than mere unawareness of an existing grievance procedure; a plaintiff must show that he was unaware because, for example, officers were unable or unwilling to make him aware, or prevented him from becoming aware 'through machination, misrepresentation, or intimidation.'" *Galberth v. Washington*, 2017 WL 3278921, at *11 (S.D.N.Y. July 31, 2017) (quoting *Ross v. Blake*, 136 S. Ct. at 1859-60); *see also Davis v. Doe*, 2017 WL 8640829, at *4 (N.D.N.Y. Dec. 29, 2017); *Grant v. Kopp*, 2019 WL 368378, at *7 (collecting cases). Plaintiff does not contend that this was the case here. Defendants have submitted evidence showing that the grievance procedures are explained during orientation to the facility and that NYCRR Title 7 and Directive No. 4040 are available in Mid-State's law library. *See* Tapia Decl. at ¶¶ 4-5. In light of this evidence, "Plaintiff's misunderstanding does not render the grievance procedure unavailable." *Porter v. Uhler*, 2019 WL 2479000, at *14 (N.D.N.Y. Feb. 19, 2019), *report and recommendation adopted*, 2019 WL 1292226 (N.D.N.Y. Mar. 21, 2019).

### III. DEFENDANTS' MOTION TO DISMISS

#### A. Legal Standard on a Motion to Dismiss

On a motion to dismiss under FED. R. CIV. P. 12(b)(6) the Court takes "all factual allegations in the complaint as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662, 697 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. at 678.  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*  In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 440 U.S. at 555). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal,* 556 U.S. at 679-80.  Where, as here, the Plaintiff proceeds *pro se*, his papers should be liberally construed to raise the strongest claims they may be read to present.  *Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990).

Defendants contend that Plaintiff's state law assault claims against Defendant Francisco must be dismissed because they are barred by New York Correction Law section 24, and because they are barred by the statute of limitations.  Defs.' Mem. of Law at pp. 12-15.  Although the Court recommends that Plaintiff's claims be dismissed for failure to exhaust, the Court will address these arguments for the sake of completeness.

### B.  New York Correction Law Section 24

"New York Corrections Law Section 24 provides DOCCS employees immunity from lawsuits based on acts or omissions within the course of their employment. Such actions must be brought in the New York Court of Claims as a claim against the state."

*Purcelle v. Thomas*, 2020 WL 1516421, at *15 (N.D.N.Y. Mar. 6, 2020), *report and recommendation adopted*, 2020 WL 1511079 (N.D.N.Y. Mar. 30, 2020) (internal citation omitted). "The Second Circuit has held that the immunity from suit in state court provided to [DOCCS] employees by § 24 extends to suits for tort claims based on state law against [DOCCS] employees in federal court." *Williams v. Ferrari*, 2018 WL 1179603, at *8 (N.D.N.Y. Feb. 5, 2018), *report and recommendation adopted*, 2018 WL 1183385 (N.D.N.Y. Mar. 6, 2018) (internal quotations omitted) (citation omitted). Immunity under this statute has been recognized in the context of an action for assault. *See Lewis v. Stanton*, 2014 WL 3106566, at *5 (N.D.N.Y. July 7, 2014).

Plaintiff argues in his Opposition that § 24 is unconstitutional. Pl.'s Opp. at ¶¶ 18-23. As Senior District Judge Kahn recently explained:

> Although Plaintiff correctly notes that *Haywood* held § 24 unconstitutional, this case only applied to § 24 precluding inmates from pursuing § 1983 claims in state court. *See Rounds v. Thompson*, No. 12-CV-953, 2013 WL 3187074, at *4 (N.D.N.Y. June 20, 2013) ("Courts in this District have held that the *Haywood* decision does not affect the question of the district court's jurisdiction to hear pendent state law claims against DOCCS employees and have continued to dismiss those claims under Corrections Law § 24."). The application of § 24 is constitutional in this context, because it bars state law claims in federal court, not federal claims in state court.

*Zulu v. Wells*, 2020 WL 6482034, at *2-3 (N.D.N.Y. Nov. 4, 2020). Accordingly, the Court recommends that Plaintiff's assault claims be dismissed because they are barred by Correction Law § 24.

### C. Timeliness of Plaintiff's State Law Claims

Finally, Plaintiff's assault claims are also untimely. Federal courts apply state statutes of limitations to pendent state claims. *Duran v. Jamaica Hosp.*, 216 F. Supp. 2d

- 16 -

63, 66 (E.D.N.Y. 2002); *Gardner v. St. Bonaventure Univ.*, 171 F. Supp. 2d 118, 128 (W.D.N.Y. 2001). Under New York law, claims for assault are governed by a one-year statute of limitations. N.Y. Civ. Prac. Law & R. 215(3); *Aiken v. Nixon*, 236 F. Supp. 2d 211, 239 (N.D.N.Y. 2002). These claims accrue at the time of the alleged assault. *Neff v. Cty. of Erie, New York*, 2017 WL 1683905, at *4 (W.D.N.Y. Apr. 4, 2017), *report and recommendation adopted*, 2017 WL 1653043 (W.D.N.Y. May 2, 2017) (citing cases). The assaults giving rise to Plaintiff's assault claims are alleged to have taken place on November 23 and November 24, 2017. Am. Compl. This action was commenced in March of 2020, well outside the one-year statute of limitations. Dkt. No. 1. Accordingly, the Court also recommends that Plaintiff's assault claims be dismissed as untimely.

## IV.  CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment and Defendants' Motion to Dismiss (Dkt. No. 21) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[3] days within which to file written objections to the foregoing report. Such objections shall be filed

---

[3] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Dated: December 10, 2020
       Albany, NY

_____
Daniel J. Stewart
U.S. Magistrate Judge